BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JAMES W. HARLOW
Acting Assistant Director

JAMES A. RYAN
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L St., NW
Washington, DC 20005
Telephone: (202) 598-5453
James.A.Ryan2@usdoj.gov

*Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Tucson Environmental Justice Task Force, *et al.*,

Plaintiffs,

v.

U.S. Food & Drug Administration, *et al.*,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

No. 4:25-cv-35-JAS

## INTRODUCTION

"Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "For example, a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally," *id.*, no matter "the intensity of the litigant's interest or the fervor of his advocacy," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). This black-letter jurisdictional principle squarely applies here and dooms Plaintiffs' case.

Plaintiffs are a disparate trio: [1] the Tucson Environmental Justice Task Force (EJ Task Force), a "grassroots organization" in Pima County, Arizona; [2] Arno Krotzky, PhD, a resident of Werder, Germany; and [3] The Law Office of Sandra T. Daussin, PLLC (LOSD), located in Pittsboro, North Carolina. Seemingly the only tie that binds these three is a concern about per- and polyfluoroalkyl substances (PFAS), a diverse group of chemicals used in hundreds of types of products. Plaintiffs submitted a citizen petition to the Food and Drug Administration (FDA), requesting various regulatory actions related to PFAS. In June 2026, FDA denied Plaintiffs' requests but also explained the numerous other steps it has taken to address exposure to PFAS.

The operative Supplemental Complaint (ECF No. 35) solely challenges FDA's decision to deny the petition. However, Plaintiffs have not plausibly alleged any actual or imminent injury traceable to the denial and likely redressable by the declaratory and injunctive relief they seek. No matter how concerned Plaintiffs are about PFAS, Article III requires more. The Court should dismiss the Supplemental Complaint for lack of subject-matter jurisdiction.

## BACKGROUND

PFAS are "a class of synthetic chemicals" that "have a wide variety of industrial and commercial applications." ECF No. 35 ¶¶ 30–31. "[E]xposure to some types of PFAS has

been linked to serious health effects." Petition Resp. (ECF No. 35-2) 5.[1] "Addressing the potential effects of Americans' exposure to certain PFAS is an FDA priority." *Id.* at 2. The agency is "working to identify routes of PFAS exposure, understand associated safety risks, and reduce the public's dietary exposure to those PFAS that may pose safety concerns," as well as "gathering data to support setting action levels for PFAS for some products in the future." *Id.*

Plaintiffs filed an initial petition about PFAS with FDA in 2023 and then a supplement in May 2025. ECF No. 35 ¶¶ 2, 81. The petition requested that FDA establish "temporary tolerances" for residues of PFAS in certain foods. ECF No. 35-2 at 1. The supplement amended the petition to request, among other things, that FDA establish "action levels for certain PFAS substances and commodities while establishing tolerances for others." *Id.* at 1–2 and 10-13. On June 17, 2026, FDA issued a 27-page response to the petition. FDA noted its "common goal" of protecting the public from harmful PFAS exposure and detailed the "steps [it] has taken and plans to take to address potential PFAS contamination." *Id.* at 2. But FDA ultimately determined "there is insufficient evidence to support [Plaintiffs'] request to set action levels and/or tolerances at the specific levels, for these specific PFAS, and for the specific commodities," under the Federal Food, Drug, and Cosmetic Act (FDCA). *Id*. at 2.

Because FDA's response mooted Plaintiffs' original claim of unreasonable delay under the Administrative Procedure Act (APA), *see* ECF No. 35 at p. 72 n.16, Plaintiffs filed their Supplemental Complaint on July 31, 2026. The Supplemental Complaint alleges a single claim—that the petition denial was unlawful under the APA, 5 U.S.C. § 706(2). *Id.* ¶¶ 301–16. Plaintiffs ask the Court to set aside the denial of the petition; declare that FDA's denial of the petition was arbitrary and capricious under 5 U.S.C. § 706(2); declare that 21 U.S.C. § 346 "requires FDA to establish tolerances for harmful substances covered by the statute, while retaining discretion only as to the tolerance level"; and remand the matter to FDA for

---

[1] *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

reconsideration. *Id.* ¶ 317 (a)–(d).

In accordance with the briefing schedule set by the Court, *see* ECF No. 34, FDA now moves to dismiss the Supplemental Complaint under Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction, which must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). At the pleading stage, the "plaintiff must plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217 (2021). And the court "presume[s]" to "lack jurisdiction" unless the plaintiffs meet their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation modified).

## ARGUMENT

### A. Plaintiffs Lack Standing

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *All. for Hippocratic Med.*, 602 U.S. at 378. "[A]n essential and unchanging part of the case-or-controversy requirement" is the doctrine of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That ensures, as relevant here, "federal courts" do not "operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *All. for Hippocratic Med.*, 602 U.S. at 379 (citation modified).

"To establish standing," Plaintiffs "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At this stage, the Supplemental Complaint "must…clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation modified). Each plaintiff falls far short of the mark.

**1. EJ Task Force**

Starting with the EJ Task Force—"a grassroots organization," ECF No. 35 ¶ 15—it "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals," *All. for Hippocratic Med.*, 602 U.S. at 393–94. And "[l]ike an individual," the EJ Task Force "may not establish standing simply based on the intensity of" its "interest" in PFAS contamination in Tucson "or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Id.* at 394 (citation modified). The Supplemental Complaint, however, does not plausibly allege any concrete harm to the EJ Task Force's "core business activities." *Id.* at 395; *see, e.g.*, ECF No. 35 ¶¶ 15, 40–48. At most, the Supplemental Complaint describes the petition denial as a setback to the EJ Task Force's "issue advocacy" *See id.* ¶ 15 (describing EJ Task Force's "goal … to inform the local Latino community about PFAS contamination …, while pressing local, state, and national officials to remediate contaminated sites and hold companies accountable."). But this "cannot create a concrete or particularized injury." *Az. All. for Retired Ams. v. Mayes*, No. 22-16490, 2026 WL 2277101, at *6 (9th Cir. Aug. 7, 2026) (en banc) ("pure issue advocacy cannot create a concrete or particularized injury.") (citing *All. for Hippocratic Med.*, 602 U.S. at 381).[2] Thus, the EJ Task Force lacks standing to sue in its own right.

The EJ Task Force also cannot bootstrap its way to Article III standing based on vague allegations of harm to the "EJ Task Force community." *E.g.*, ECF No. 35 ¶ 44. The EJ Task Force "must assert [its] own legal rights and interests and cannot rest a claim to relief on

---

[2] Because "Article III's standing requirement does not apply to agency proceedings," *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527–28 (9th Cir. 1997), the EJ Task Force's mere participation in the citizen petition process does not confer constitutional standing, *see, e.g.*, *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002).

the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). Here, Plaintiffs allege that such third parties include South Tucson's "local Latino community," Linda Shosie, and Ms. Shosie's family members. ECF No. 35 ¶¶ 15, 46.

Nor does the EJ Task Force possess "representational standing"—to the extent that it even asserts this theory (which is unclear from the Supplemental Complaint). *Arizona All.*, 2026 WL 2277101, at *4 n.1. The most obvious flaw is that the Task Force does not allege anything regarding its membership.[3] The Supplemental Complaint alleges only that the EJ Task Force "is directed by" Ms. Shosie and includes one passing reference to having members that appear indistinguishable from the third parties listed above. ECF No. 35 ¶ 15 and ¶ 317. Even if read to mean Ms. Shosie also is a "member" for purposes of representational standing, the Supplemental Complaint does not plausibly show that Ms. Shosie or these unnamed members have "standing to sue in their own right." *Arizona All.*, 2026 WL 2277101, at *4 n.1 (citation modified).

Because FDA "den[ied] the request for tolerances and/or action levels," EJ Task Force alleges that it and Ms. Shosie face a "considerable risk of continued exposure to PFAS-adulterated food," which in turn "increase[es] their chances of developing . . . PFAS-related illnesses." ECF No. 35 ¶ 48. This stretches the imminence requirement for an injury-in-fact "beyond the breaking point" because EJ Task Force merely alleges a risk of physical injury "at some indefinite future time." *Lujan*, 504 U.S. at 564 n.2; *see, e.g.*, *Int'l Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 852 (9th Cir. 2025) ("Although probabilistic harm can create standing, it does not replace the foundational rule that a future injury must be imminent in order to satisfy the injury-in-fact requirement.").

And when, as here, the "asserted injury arises from the government's allegedly unlawful . . . lack of regulation of someone else"—such as companies that make or

[3] The Ninth Circuit "has recognized that an organization need not always identify by name the member or members injured, that flexibility may be invoked only when it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action." *Satanic Temple v. Labrador*, 149 F.4th 1047, 1051 (9th Cir. 2025).

distribute commodities containing PFAS over the action levels or tolerances Plaintiffs seek— "much more is needed to establish standing." *United States v. Texas*, 599 U.S. 670, 678 (2023) (citation modified). Yet the Supplemental Complaint offers nothing more than conclusory allegations about "a highly attenuated chain of possibilities" at the end of which Ms. Shosie might become ill. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). That does not suffice to establish an imminent injury traceable to the challenged petition denial. *See, e.g.*, *Gatabi v. FDA*, WL 5077100, at *4 (N.D. Cal. Dec. 10, 2024) (no standing to challenge alleged FDA under-regulation of mercury in seafood because plaintiff's "physical injury . . . is speculative and does not have the necessary causal link between his symptoms and agency conduct"). Nor does the EJ Task Force explain how any judicial relief as to FDA's petition denial would redress any past exposure of Ms. Shosie to "environmental PFAS." ECF No. 35 ¶ 44; *see Gatabi*, 2024 WL 5077100, at *4.[4]

At bottom, the EJ Task Force has not plausibly alleged any basis for Article III standing and should be dismissed for failure to establish subject-matter jurisdiction. And because the EJ Task Force is the sole basis for venue in this District, *see* ECF No. 35 ¶ 23, the Court may simply dismiss the balance of the case under Federal Rule of Civil Procedure 12(b)(3) for "improper" venue, *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986).

**2. Dr. Krotzky and LOSD**

Should the Court consider the standing of the remaining two Plaintiffs—Dr. Krotzky and LOSD—their arguments are equally flawed. Since 2016, Dr. Krotzky has lived in Germany, which is subject to the European Commission's "established enforceable limits and recommended monitoring levels for certain PFAS in various foods." ECF No. 35 ¶¶ 50, 245. Yet he claims the challenged FDA action "increases his risk of developing . . . PFAS-related illnesses" because he "consumes U.S. imported foods." ECF No. 35 ¶¶ 59–

---

[4] Because Ms. Shosie has not shown "an injury in fact," she necessarily cannot assert the rights of any third-party family members. *Powers*, 499 U.S. at 411 (citation modified); *see* ECF No. 35 ¶ 46. She also has not established the requisite "close relation" to protect his or her own interests. *Powers*, 499 U.S. at 411.

61.

For the same reasons as Ms. Shosie, Dr. Krotzky's feared future illness is speculative and neither imminent nor certainly impending. Indeed, it is even more attenuated because, even accepting his allegations as true, "the acts necessary to make the [asserted] injury happen are at least partly within [his] own control," *Lujan*, 504 U.S. at 564 n.2: he simply could stop eating certain imported foods from the United States. Also, like Ms. Shosie, Dr. Krotzky fails to show how any judicial relief as to FDA's petition denial would redress his alleged past exposure to "environmental PFAS." ECF No. 35 ¶ 61; *see Gatabi*, 2024 WL 5077100, at *4. Dr. Krotzky does not have standing.

LOSD does not either. LOSD wrongly attempts to piggyback on its owner for standing. *See* ECF 35 ¶ 62. As a professional limited liability company, "duly organized and existing under the laws of North Carolina," *id.* ¶ 17, LOSD is "a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it" and "who own it," *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see Matter of Estate of Russo*, 926 S.E.2d 192, 197 (2026) ("A professional limited liability company is a corporate entity created under Chapter 57D."). In other words, LOSD is not, legally or factually, "one [and] the same" as its "owner," Sandra Daussin, for "purposes of PFAS exposure." ECF 35 No. ¶ 62. Thus, LOSD cannot establish Article III standing based on Ms. Daussin's fear, as a natural person, of future adverse health effects from PFAS.[5]

At bottom, no plaintiff alleges more than "a general legal, moral, ideological, or policy objection to" FDA's decision. *All. for Hippocratic Med.*, 602 U.S. at 381. "Article III standing," accordingly, "screens [them] out" as proper plaintiffs. *Id.*

---

[5] Even if LOSD could somehow borrow Ms. Daussin's theory of future personal injury, that theory fails for the same reasons as Ms. Shosie and Dr. Krotzky.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this case for lack of subject-matter jurisdiction.

Respectfully submitted this 14th day of September 2026.

By: /s/ *James A. Ryan*
JAMES A. RYAN
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
*Attorney for Defendants*